[Cite as *State v. Schrader*, 2018-Ohio-2634.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2017CA00131 |
| JEREMY SCHRADER | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Case No. 2017CR0776 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | July 2, 2018 |
| APPEARANCES: | |

For Plaintiff-Appellee

JOHN D. FERRERO
Prosecuting Attorney
Stark County, Ohio

By: KATHLEEN O. TATARSKY
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South – Suite 510
Canton, Ohio 44702-1413

For Defendant-Appellant

DONOVAN HILL
116 Cleveland Ave. North
Canton, Ohio  44702

*Hoffman, P.J.*

{¶1} Defendant-appellant Jeremy Schrader appeals his conviction and sentence entered by the Stark County Court of Common Pleas, on one count of domestic violence, in violation of R.C. 2919.25(A), a felony of the third degree; and one count of assault on a police officer, in violation of R.C. 2903.13(A)(C)(5), a felony of the fourth degree, following a jury trial. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2} On May 26, 2017, the Stark County Grand Jury indicted Appellant on one count of domestic violence, in violation of R.C. 2919.25(A), a felony of the third degree; one count of assault, in violation of R.C. 2903.13(A)(C)(5), a felony of the fourth degree; and one count of endangering children, in violation of R.C. 2919.22(A), a misdemeanor of the first degree.

{¶3} Appellant appeared before the trial court for arraignment on June 2, 2017 and entered a plea of not guilty to the Indictment. At a pretrial hearing on June 14, 2017, Appellant advised the trial court he did not like his attorney, would not waive his speedy trial rights, and would not accept the state's plea offer of a twenty four month prison term in exchange for a guilty plea. The trial court conducted a final pretrial hearing on June 28, 2017, at which Appellant rejected the state's second plea offer of a forty eight month sentence with judicial release after six months to the reentry program.

{¶4} The matter proceeded to trial on June 29, 2017. The following evidence was adduced at trial.

{¶5} Vanetta Schrader testified she and Appellant had been married for two years. The couple resided at 1202 Havana Place, NW, Canton, Stark County, Ohio, with

their infant daughter, Vanetta's seven year old daughter, and Appellant's friend, Tim Milbourne. The couple also had a pit bull puppy and three large dogs, including Vanetta's dog, Huck, a pit bull-shepherd mix. Vanetta had owned Huck for three years, and she was bonded to him, and the dog to her. When visitors came to the residence, Vanetta would ensure the dogs were crated, especially Huck. Appellant was aware Huck, in particular, needed to be crated when strangers entered the home.

{¶6} At approximately 11:00 a.m. on April 18, 2017, Vanetta went into the bedroom to wake up Appellant. Their infant daughter was asleep in a playpen in the bedroom. Appellant began to lecture Vanetta she was inconsiderate and did not do anything around the house. The argument escalated as Vanetta verbally fought back. The baby started to cry. When Vanetta picked her up, Appellant "jumped into [her] face." She tried to exit the bedroom, but Appellant grabbed her and threw her onto the bed while the baby was still in her arms. Appellant slapped Vanetta's face. Vanetta released the baby from her arms and the infant rolled onto the bed.

{¶7} Appellant continued to yell at Vanetta, called her "a few choice names", and exited the bedroom. Once in the hallway, Appellant heard the television still on in Vanetta's older daughter's upstairs bedroom although the girl had left for school. Appellant threatened to disconnect the television, and proceeded upstairs. Vanetta warned him not to disconnect the cable box as she paid for the service. Appellant flew down the stairs and attempted to head-butt Vanetta. The baby was close to her face and Vanetta had to move so the infant would not get hurt.

{¶8} Vanetta retreated to the bedroom and telephoned her mother, with whom she spoke for approximately 20 minutes. After Vanetta's mother telephoned 911, the 911

dispatcher contacted Vanetta. During the 911 call, Vanetta, who was crying and scared, told the dispatcher Appellant tried to head-butt her, and she was afraid for herself, her baby, and her dog. The 911 call was played for the jury.

{¶9} Timothy Milbourne had been living with Appellant and Vanetta for approximately one month when the incident occurred. Milbourne stated Vanetta's dog, Huck, could be aggressive if anyone came toward him. Milbourne indicated Huck and the other dogs were put in a large crate in the kitchen when people visited the home. On the morning of April 18, 2017, Milbourne was asleep on the couch in the living room when he heard Appellant and Vanetta arguing, which he described as a "very aggressive verbal" argument. Milbourne went upstairs to shower and get ready for work. The dogs, including Huck, were crated during this time. While he was showering, he heard Appellant say the police were there and then heard the dogs running in the hallway. Appellant was angrily calling Huck's name. Milbourne heard banging, doors opening, and finally a gunshot. Police pulled him out of the shower and escorted him outside. As he exited the house, he saw Huck lying on the floor of the screened porch, "bleeding out". Milbourne recalled, while he resided with Appellant and Vanetta, he heard Appellant threaten Vanetta he would "F up your dog" if she ever did anything to him.

{¶10} Canton Police Officer Kevin Sedares testified he, Officer Heslop, Officer Samuels, and Officer Thomas were dispatched to 1202 Havana Place, NW, in Canton on April 18, 2017. Prior to arriving at the scene, dispatch twice notified the officers there were large dogs at the residence and the animals could possibly be aggressive. Officers Sedares and Heslop arrived at the scene first and made contact with Vanetta, who was distraught and crying. The officers asked the location of the dogs, and Vanetta advised

them the dogs were crated, but she was concerned Appellant would release her dog. Vanetta reiterated her concern Appellant would release her dog, and indicated the dog would attack. Officer Heslop made entry onto the screen porch, and ordered Appellant to exit the house. Officer Sedares moved onto the porch. As he reached the threshold of the door to the interior of the home, a dog came after him. Officer Sedares took two steps back and yelled, "NO!" The dog lunged and bit him in the crotch. Officer Sedares shot the dog as it continued to bite him. Officer Heslop testified similarly.

{¶11} At the close of the state's case, Appellant made a Crim. R. 29 motion for acquittal, which the trial court denied. Appellant did not present any witnesses on his behalf.

{¶12} After hearing all the evidence and deliberations, the jury found Appellant guilty of domestic violence, guilty of assault on a police officer, and not guilty of endangering children. The trial court sentenced Appellant to a period of incarceration of thirty six months on Count 1, domestic violence, and twelve months on Count 2, assault on a police officer. The trial court ordered the sentences be served concurrently for a total period of incarceration of thirty six months. The trial court also imposed a mandatory three year period of post release control.

{¶13} It is from these convictions Appellant appeals, raising as his sole assignment of error:


I. THE APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

I.

**{¶14}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). Therein, the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id* at paragraph two of the syllabus.

**{¶15}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶16}** "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d

212, at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses.

**{¶17}** Appellant was convicted of one count of domestic violence, in violation of R.C. 2919.25(A), which provides:

> No person shall knowingly cause or attempt to cause physical harm to a family or household member.

**{¶18}** Appellant notes the state's entire case relative to the events which occurred in the home prior to the police arriving came from the testimony of Vanetta and Milbourne. Appellant asserts Milbourne's testimony should be discounted because he did not directly witness what occurred between Appellant and Vanetta as he was in the shower. Appellant further contends, "upon even cursory review it is clear [Vanetta's] testimony is extremely problematic, so much so Jury [sic] must have lost its way." Brief of Appellant at 4.

**{¶19}** In support of his argument, Appellant points to a number of statements Vanetta made at trial which he maintains are not supported or corroborated by extrinsic evidence. For example, Vanetta testified she was married to Appellant, however, "the record is devoid of any extrinsic evidence to support this claim, such as a marriage certificate, or even a date of marriage." *Id.* "Similarly [Vanetta] stated she 'believed' she 'may' be pregnant", but "[a]gain no corroboration in supplied." *Id.* Appellant further challenges Vanetta's claim Appellant was going to disconnect the television as there was no evidence either the television or cable box were, in fact, disconnected. Appellant adds, Vanetta acknowledged she suffers from bipolar disorder and PTSD, but was not taking

medication at the time of the altercation. Appellant is attacking the credibility of the witnesses which is left for the trier-of-fact to weigh.

{¶20} As set forth in our Statement of the Facts and Case, set forth supra, the testimony at trial revealed Vanetta and Appellant had been married for two years, and resided together at the Havana Place address with their infant daughter, Vanetta's seven year old daughter, and Milbourne. On the morning of April 18, 2017, after Vanetta woke up Appellant, he began to lecture her. An argument ensued, which escalated as Vanetta verbally fought back. While Vanetta was holding the baby, Appellant "jumped into [her] face." She tried to exit the bedroom, but Appellant grabbed her and threw her onto the bed while the baby was still in her arms. Appellant slapped Vanetta's face. Vanetta released the baby from her arms and the infant rolled onto the bed.

{¶21} Appellant continued to verbally assault Vanetta as he exited the bedroom and proceeded upstairs, threatening to disconnect the television which had been left on. Vanetta warned him not to disconnect the cable box as she paid for the service. Appellant flew down the stairs and attempted to head-butt Vanetta. Vanetta was holding the baby close to her face and had to move so the infant would not get hurt. Vanetta retreated into the bedroom and called her mother, who called 911. The 911 dispatcher contacted Vanetta. The tape of the 911 call was played to the jury. On the tape, Vanetta, who was crying and scared, told the dispatcher Appellant tried to head-butt her, and she was afraid for herself, her baby, and her dog. When officers arrived at the residence, they found Vanetta outside. Vanetta was crying and visibly distraught as she repeated her story.

{¶22} The jury was free to accept or reject any or all of the evidence offered by the parties and assess the witnesses' credibility. "While the jury may take note of the

inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State* v. *McGregor,* 5th Dist. Ashland No. 15-COA-023, 2016-Ohio-3082, 2016 WL 2942992, ¶ 10, citing *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 2000 WL 297252 (Mar. 23, 2000). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *id.* Our review of the entire record reveals no significant inconsistencies or other conflicts in the state's evidence which would demonstrate a lack of credibility of the state's witnesses as to the essential elements of the charge of domestic violence.

{¶23} Based upon the foregoing, we find Appellant's conviction for domestic violence was supported by sufficient evidence and was not against the manifest weight of the evidence.

{¶24} Appellant was also convicted of one count of assault, in violation of R.C. 2903.13(A)(C)(5), which reads:

(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn. *  * *

(C)(5) If the victim of the offense is a peace officer or an investigator of the bureau of criminal identification and investigation, a firefighter, or a person performing emergency medical service, while in the performance of their official duties, assault is a felony of the fourth degree.

{¶25} R.C. 2901.01(A)(3) defines "Physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶26} Appellant argues the state failed to establish he knowingly released Huck from his crate when the police arrived. We find the evidence presented belies such assertion.

{¶27} Appellant and Vanetta owned four dogs, including Vanetta's dog, Huck, a pit bull-shepherd mix. When visitors came to the residence, Vanetta would ensure the dogs, especially Huck, were crated. Appellant was aware Huck, in particular, needed to be crated when strangers entered the home. Vanetta testified all of the dogs were crated prior to the police arriving at the residence. She advised the 911 dispatcher the dogs were crated, but expressed her concern Appellant would let Huck loose because she knew her dog could be aggressive with strangers.

{¶28} Milbourne testified the dogs were in the kennel in the kitchen when he went to shower and get ready for work. While he was showering, Milbourne heard Appellant say the police were there and then heard the dogs running in the hallway. Appellant was angrily calling Huck's name. Milbourne heard banging, doors opening, and finally a gunshot.

{¶29} The state also introduced a March, 2017 post from Appellant's Facebook page, which was an article entitled, "Court rules police can legally execute your dog if it does anything but sit quietly". Such post is significant given Vanetta's stated concern about her dog to the 911 dispatcher and that Appellant had threatened to "F up" her dog is she ever did anything to him. Appellant had showed this article to Vanetta.

{¶30} Based upon the foregoing, we find Appellant's conviction for assault on a police officer was supported by sufficient evidence and was not against the manifest weight of the evidence.

{¶31} Appellant's sole assignment of error is overruled.

{¶32} The judgment of the Stark County Court of Common Pleas is affirmed.


By: Hoffman, P.J.

Delaney, J. and

Baldwin, J. concur